Elizabeth L. Deeley (SBN 230798)
elizabeth.deeley@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
gregg.locascio@kirkland.com
Jonathan D. Brightbill (admitted *pro hac vice*)
jonathan.brightbill@kirkland.com
Dennis J. Abdelnour (admitted *pro hac vice*)
dennis.abdelnour@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Attorneys for Defendant
ZONEPERFECT NUTRITION COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES COLUCCI and KIMBERLY S. SETHAVANISH,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ZONEPERFECT NUTRITION COMPANY,<br><br>        Defendant. | CASE NO. 11-CV-04561 SC<br><br>**ZONEPERFECT'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Amended Complaint Filed: March 2, 2012<br>Judge: Honorable Samuel Conti<br>Hearing Date: May 25, 2012<br>Time: 10:00 AM PST<br>Courtroom: 17th Floor, Courtroom 1 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

NOTICE OF MOTION AND MOTION TO DISMISS ............................................... 1

MEMORANDUM OF POINTS & AUTHORITIES .................................................... 1

I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY .......................... 3

II.  STATEMENT OF QUESTIONS INVOLVED ............................................... 5

III.  LEGAL STANDARD ...................................................................................... 5

IV.  ARGUMENT .................................................................................................. 7

    A.  Plaintiff Colucci Lacks Constitutional And Statutory Standing To Pursue Any Asserted Cause Of Action Because He Suffered No Injury .................................... 7

        1.  Plaintiff Colucci Lacks Article III Standing ................................................. 7

        2.  Plaintiff Colucci Lacks Statutory Standing Under California Law ............. 8

    B.  Both Plaintiffs Lack Standing To Assert Claims For ZonePerfect Products That They Did Not Buy ........................................................................ 9

    C.  All of Plaintiffs' Claims Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege That ZonePerfect Bars Are Not "Natural" Under FDA Policy ..10

        1.  Plaintiffs Failed To Include Sufficient Factual Allegations To Establish That ZonePerfect's Products Are Not "Natural" ....................... 10

            a.  These Ingredients Are Normally Permitted In Organic Products ..11

            b.  "Natural" Food Retailers Advertise And Sell Products That Contain These Ingredients ............................................... 12

            c.  Plaintiffs Acknowledge That Each of The Allegedly "Synthetic" Ingredients Are Commonly Used And Expected To Be In Food .......................................................... 13

            d.  The Sheer Litany Of "All-Natural" Complaints Indicates The Widespread Use Of These Ingredients ........................... 14

        2.  Plaintiffs' Claims Are Preempted By Federal Law ................................. 17

        3.  Plaintiffs' Failure To Plead Facts Sufficient To Establish That ZonePerfect Bars Are Not "Natural" Requires Dismissal Of All Plaintiffs' State Law Claims ........................................................ 19

1

D.      Plaintiffs Failed To Plead Fraud With The Requisite Particularity ........................22

2

E.      Plaintiffs' Failure To Satisfy The CLRA Notice Requirement Necessitates
        Dismissal With Prejudice........................................................................................23

3

4

F.      Plaintiffs Failed To State A Claim for Unjust Enrichment.....................................24

5

V.    CONCLUSION.................................................................................................................25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................... 6, 16, 19

*Astiana v. Ben & Jerry's Homemade, Inc.*,
2011 WL 2111796 (N.D. Cal. 2011) .................................................................... 2, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 6

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............................................................................... 7

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................................. 23, 24

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) .............................................................. 8

*Clayton v. Landsing Pac. Fund Inc.*,
2002 WL 1058247 (N.D. Cal. 2002),
*aff'd*, 56 F. App'x 379 (9th Cir. 2003) ............................................................... 21

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007) ............................................................................. 19

*Davis v. Chase Bank U.S.A., N.A.*,
650 F. Supp. 2d 1073 (C.D. Cal. 2009) ............................................................... 23

*Degelmann v. Advanced Med. Optics Inc.*,
659 F.3d 835 (9th Cir. 2011) ............................................................................... 18

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (Cal. Ct. App. 2008) ....................................................... 8

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) .............................................................. 8, 25

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ................................................................ 5, 6

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................................................. 17, 18

*Janda v. T-Mobile, USA, Inc.*,
2008 WL 4847116 (N.D. Cal. 2008) .................................................................... 23

*Jogani v. Superior Court*,
165 Cal. App. 4th 901 (Cal. Ct. App. 2008) ....................................................... 25

*Johns v. Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. 2010) ............................................................... 10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)........................................................... 6, 21, 22

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005),
   *aff'd*, 252 F. App'x 777 (9th Cir. 2007) ..................................................... 23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................ 7

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   2011 WL 1497096 (E.D. Cal. 2011) .............................................................. 9

*Outboard Marine Corp. v. Superior Court*,
   52 Cal. App. 3d 30 (Cal. Ct. App. 1975)...................................................... 23

*Planned Parenthood of Idaho, Inc. v. Wasden*,
   376 F.3d 908 (9th Cir. 2004)........................................................................ 11

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
   732 F. Supp. 2d 952 (N.D. Cal. 2010) ......................................................... 19

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010)...................................................................... 20

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................... 21, 22

*Schauer v. Mandarin Gems of Cal., Inc.*,
   125 Cal. App. 4th 949 (Cal. Ct. App. 2005) .................................................. 8

*Shapiro v. Sutherland*,
   64 Cal. App. 4th 1534 (Cal. Ct. App. 1998) ................................................ 21

*Smith v. Ford Motor Co.*,
   2011 WL 6322200 (9th Cir. 2011)............................................................... 24

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. 2009).............................................................. 23

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011)........................................................................ 18

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987)......................................................................... 6

*Valley Forge Christian College v. Americans United for Separation*
   *of Church and State, Inc.*,
   454 U.S. 464 (1982) .................................................................................. 7, 9

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)...................................................................... 23

ZONEPERFECT MOTION TO DISMISS FIRST
AMENDED COMPLAINT
          iv
          CASE NO. 11-CV-04561 SC

*Wang v. OCZ Tech. Group, Inc.,*
    276 F.R.D. 618 (N.D. Cal. 2011) ............................................................. 6, 22

*Yourish v. Cal. Amplifier,*
    191 F.3d 983 (9th Cir. 1999) ......................................................................... 6

**Statutes**

21 U.S.C. § 341 *et seq* ........................................................................................ 17

21 U.S.C. § 343(q)(1) ................................................................................... 17, 18

21 U.S.C. § 343-1(a)(3) ...................................................................................... 17

21 U.S.C. § 343-1(a)(4) ...................................................................................... 17

7 U.S.C. § 6518(m)(4) ......................................................................................... 11

7 U.S.C. § 6518(m)(6) ......................................................................................... 11

**Other Authorities**

21 C.F.R. § 100.1(c)(4)(i) ................................................................................... 17

21 C.F.R. § 100.1(c)(ii) ...................................................................................... 17

58 Fed. Reg. 2302, 2407 (Jan. 6, 2003) ......................................................... 1, 10

58 Fed. Reg. 2302, 2407, 2409 (Jan. 6, 1993) ................................................... 14

7 C.F.R. § 205.605(b) (2010) ........................................................................ 4, 11

Cal. Bus. & Prof. Code § 17204 ........................................................................... 8

Cal. Bus. & Prof. Code § 17500 (West) .............................................................. 20

Cal. Bus. Prof. Code § 17200 ............................................................................. 20

Cal. Civ. Code § 1760 (West) ............................................................................... 8

Cal. Civ. Code § 1761 (West) ............................................................................... 8

Cal. Civ. Code § 1770(a) (West) ......................................................................... 20

Cal. Civ. Code § 1782 (West) ............................................................................. 23

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 5

Fed. R. Civ. P. 9(b) ......................................................................................... 6, 22

1

**Legislative Materials**

2

The Nutrition Labeling and Education Act of 1990,
Pub. L. No. 101–535, 104 Stat. 2353 (1990) ................................................................................. 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 25, 2012 at 10:00 a.m., or as soon thereafter as this motion may be heard in the courtroom of the Honorable Samuel Conti, located at 450 Golden Gate Ave., 17th floor, Courtroom 1, San Francisco, California 94102, Defendant ZonePerfect Nutrition Company will, and hereby does, move the Court for an order dismissing the First Amended Complaint of James Colucci and Kimberly Sethavanish, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the entire file in this matter, and the Defendant's exhibits attached to Defendant's Request for Judicial Notice.

### MEMORANDUM OF POINTS & AUTHORITIES

Plaintiffs' First Amended Complaint, which expressly pleads Plaintiffs' desire to enforce U.S. Food and Drug Administration ("FDA") policy on the meaning of the claim "natural" for food labeling, should be dismissed.  Plaintiffs fail to plead facts sufficient to establish that, by labeling its nutrition bars "All Natural," ZonePerfect has made claims that are inconsistent with FDA policy on "natural" or the various California state laws they assert to enforce pursuant to FDA policy.

For nearly twenty-five years, food companies like ZonePerfect have relied on the FDA policy in advertising food products as "natural."  Contrary to the central premise of Plaintiffs' complaint, the FDA policy recognizes *on its face* that foods can be labeled as "natural" even though they contain so-called "synthetic" ingredients, as identified in the complaint.  The FDA policy on the use of the claim "natural" in food labeling provides that "natural" means "that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food *that would not normally be expected to be in the food*."  (3/2/2012 First Amended Complaint, D.I. 32 [hereinafter "FAC"] ¶ 14 (quoting 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003)).)[1] Thus, FDA policy provides that certain "synthetic" ingredients are so commonly accepted and necessary for producing nutritional, safe, stable consumer foods—*i.e.*, that they are "normally expected to be found in the food"—that it can be perfectly permissible (even beneficial) to include

---

[1] All emphasis added and internal quotation marks omitted unless otherwise indicated.

them in foods labeled and advertised as "natural."

Plaintiffs concede that they hold ZonePerfect to no stricter standard than the FDA Policy. Indeed, despite various references to miscellaneous definitions of "natural" and "synthetic," Plaintiffs' First Amended Complaint expressly pleads that the only relevant standard is the FDA's "natural" policy: "Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDA Policy concerning what is natural."  (FAC ¶ 74.)  With that, a review of the actual FDA Policy compels dismissal. Plaintiffs misread the FDA Policy, and only plead that ZonePerfect nutrition bars are supposedly not "natural" simply because they contain supposedly "synthetic" ingredients.  (*Id*. ¶ 46.)  But FDA policy requires more, and Plaintiffs plead no facts plausibly establishing that these so-called "synthetic ingredients" in ZonePerfect bars "would not normally be expected to be in the food."  In fact, Plaintiffs' complaint—as well as their numerous other filings before this Court—acknowledge that these commonly-used ingredients ***are normally expected*** to be found in foods, a conclusion that is consistent with basic, verifiable facts which this Court may judicially notice.

Notably, twenty-five years of the FDA policy on the use of the claim "natural" produced remarkably limited litigation about the use of that claim.  Yet in the past two years, the number of cases has exploded.  At least thirty suits have been filed in recent months—many in this federal District Court—pursuing the same theory.  These suits are not the result of newly-launched, specious "natural" claims.  They are instead targeted at products that, consistent with the FDA policy, have long used "natural" claims without confusion.  Food companies and retailers have relied on the FDA policy and for decades used safe ingredients like ascorbic acid (vitamin C) and glycerine— ingredients described as "synthetic" under organic food regulations—in foods labeled "natural."

The flood of these purported class-action lawsuits should stop here.  There has been no policy violated and no consumer harmed.  A prior court considering similar claims on a motion to dismiss freely acknowledged "***the implausibility of the claim*** that the plaintiffs (including the class) were deceived" as these plaintiffs describe.  *Astiana v. Ben & Jerry's Homemade, Inc*., 2011 WL 2111796, at *4 (N.D. Cal. 2011).  In that case, however, it was not explained to the court that the use of a so-called "synthetic" in a food is not by itself inconsistent with FDA policy on the use of the

term "natural."  Here, Plaintiffs failed to plead sufficient facts to show that any ingredients used in ZonePerfect bars are not "normally expected to be found in the food."  Indeed, with every additional case these same plaintiffs or their counsel file against another food company, it becomes increasingly clear that ingredients like those found in ZonePerfect *are* "normally expected" in foods labeled as "natural," as they have been widely used in such foods for years.  For this and the reasons set forth below, all Plaintiffs' claims should be dismissed with prejudice.

Plaintiffs' claims should also be dismissed in whole or part on additional grounds.  ***First,*** Plaintiff Colucci ***never purchased*** any of the ZonePerfect bars at issue and therefore suffered no injury.  He lacks constitutional and statutory standing, and should be dismissed as an improper party. ***Second***, while Plaintiff Sethavanish only purchased one product (Chocolate Peanut Butter ZonePerfect bars), she purports to assert claims covering purchases of every single variety of ZonePerfect bar on the market, even though the complaint concedes different ZonePerfect bars contain different ingredients and, thus, present different issues.  Because none of the named plaintiffs have been injured by ZonePerfect bars that they did not purchase, Plaintiffs lack standing to pursue any claim as it relates to those other kinds of ZonePerfect bars.  ***Third,*** Plaintiffs' failure to satisfy the thirty-day notice requirement of California's Consumers Legal Remedies Act ("CLRA") necessitates dismissal of that cause of action with prejudice.  ***Fourth***, Plaintiffs' failure to plead their claims for fraud with particularity violates Federal Rule of Civil Procedure 9(b) and likewise requires dismissal.  ***Fifth***, the FDA's food-labeling framework expressly preempts Plaintiffs' claims. ***Sixth***, Plaintiffs improperly assert a claim for unjust enrichment even though California courts have repeatedly held that no such cause of action exists in California.

## I.       STATEMENT OF FACTS AND PROCEDURAL HISTORY

This is one of a litany of "natural" cases pending in the California federal courts involving common food ingredients that have been used widely in food products labeled as "natural" for decades.  Yet in the past eighteen months, this same collection of class action law firms—often with the same plaintiffs—have suddenly filed suits against a significant portion of the commercial food industry, accusing them of misrepresenting their products.  Every case relies on essentially the same theory: that "natural" claims made on the products are improper because the labels do not further

explain that certain ingredients, clearly and appropriately disclosed on the packaging, are sometimes categorized as "synthetics"—whatever that means.  The allegation that an ingredient is "synthetic" rests largely on the United States Department of Agriculture's ("USDA") organic regulations.  For example, seven of the ten ingredients listed in the complaint are on the USDA's "Acceptable-Synthetics-in-Organics" list.  7 C.F.R. § 205.605(b) (2010).  Those same regulations do **not** state, however, what the term "synthetics" means in that context, nor do they state that products containing those ingredients cannot be labeled as "natural."  *See id.*

On September 14, 2011, Plaintiffs James Colucci and Kimberley S. Sethavanish (collectively "Plaintiffs") filed a complaint in this Court, asserting a number of state claims against Defendant ZonePerfect Nutrition Company ("ZonePerfect") based on ZonePerfect's use of the term "all natural" on its labels.[2]  On March 2, 2012, Plaintiffs filed a First Amended Complaint ("FAC") against ZonePerfect.  Plaintiffs allege that Colucci, given his "desire to try to eat healthier foods," asked Sethavanish "to purchase two multi-bar packs of ZonePerfect nutrition bars per month" and send them on a monthly basis to Colucci while he was on duty with the Marine Corps.  (FAC ¶ 5.) Sethavanish pleads she purchased on Colucci's behalf only "ZonePerfect's [Chocolate] Peanut Butter flavor" bars.  (*Id.* ¶ 6.)  The facts pled show that Colucci did not buy the bars and that Sethavanish did not eat the bars.  While conceding that ZonePerfect's ingredients were listed on the ingredient panel for the bars, (*id.* ¶ 41), Plaintiffs nevertheless allege that "the labels Ms. Sethavanish relied on **did not disclose** that synthetic ingredients were used in the products."  (*Id.* ¶¶ 6, 41.)  Plaintiffs claim to "have been injured . . . by paying a premium for those supposedly 'All-Natural' nutrition bars over less expensive non-natural alternatives."  (*Id.* ¶ 69.)

As the basis of every cause of action, Plaintiffs assert that labeling ZonePerfect bars as "All Natural" "violates the FDA Policy concerning what is natural," (*id.* ¶ 74), and that:

> This identical conduct also serves as the ***sole factual basis of each***

---

[2] In a span of only a few months, Plaintiff Sethavanish filed four other complaints based on the same legal theory and essentially the same facts, one against Nonni's Foods (Case No. 3:11-cv-04578-SC, Northern District of California, filed Sept. 23, 2011), another against Balance Bar Company (Case No. 4:11-cv-04547-PJH, Northern District of California, filed Sept. 13, 2011 ), and two against Kashi Company (Case No. 3:11-cv-01967-H-BGS, Southern District of California, filed Aug. 24, 2011; Case No. 3:11-cv-02356-H-BGS, Southern District of California, filed Oct. 12, 2011). Plaintiff Colucci is a party to the two suits filed against Kashi Company.

*cause of action* brought by this First Amended Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDA Policy concerning what is "natural."

(*Id.*)   The FDA Policy provides that "natural" is defined with two elements: "[1] that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food [2] *that would not normally be expected to be in the food*." (*Id.* ¶ 14.)

On August 30, 2011, "Plaintiffs notified ZonePerfect in writing of the particular violations of [the CLRA], and demanded that ZonePerfect repair, or otherwise rectify," the labeling of ZonePerfect bars.  (*Id.* ¶¶ 47, 101.)  Just over two weeks later, on September 14, 2011, Plaintiffs filed their initial Complaint.  On January 23, 2012, Plaintiffs sent another letter claiming other ingredients in ZonePerfect—all on the label at the time of the original complaint—are also "synthetics." (*Id.* ¶ 47.)  Plaintiffs filed their First Amended Complaint on March 2, 2012.

## II.   STATEMENT OF QUESTIONS INVOLVED

1. Does James Colucci, an individual who never purchased any ZonePerfect product, lack standing to assert the claims set forth in Plaintiffs' First Amended Complaint?

2. Do Plaintiffs lack standing to assert claims concerning varieties of ZonePerfect bars that they never purchased or consumed?

3. Do Plaintiffs fail to allege facts sufficient to establish that ZonePerfect's ingredients are not "normally expected to be in the food" and therefore not "natural" under FDA policy?

4. Do Plaintiffs fail to plead their claims of fraud with the requisite particularity?

5. Does Plaintiffs' failure to comply with notice requirement of the Consumer Legal Remedies Act necessitate dismissal with prejudice?

6. Do Plaintiffs fail to state a claim when their state law claims are expressly preempted by Federal food-labeling regulations?

7. Do Plaintiffs fail to state a claim for unjust enrichment when California law does not recognize unjust enrichment as a proper cause of action?

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 710 (N.D. Cal. 2011).

Although the court at this stage "must presume all factual allegations of the complaint to be

true and draw all reasonable inferences in favor of the nonmoving party," *id.* (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)), that deference "***is inapplicable to legal conclusions***." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, courts can—and in this case should—"choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.

"[O]nly a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Id.* "Facial plausibility" requires that the plaintiff plead enough "factual content" to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" and should be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Rule 9(b) requires that "in alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). This standard obligates the plaintiff to provide a specific description of the fraudulent conduct—the "who, what, when, where, why, and how." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). "The heightened pleading requirement applies to state law causes of action where fraud is a necessary element of the claim, as well as where plaintiff alleges a 'unified course of fraudulent conduct,' such that the entire claim 'sounds in fraud.'" *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. 2011) (applying Rule 9(b) to UCL, FAL, and CLRA). In cases alleging false or misleading statements, the complaint must "set forth what is false or misleading about a statement, and . . . an explanation as to why the statement or omission complained of was false or misleading." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).

## IV.   ARGUMENT

### A.   Plaintiff Colucci Lacks Constitutional And Statutory Standing To Pursue Any Asserted Cause Of Action Because He Suffered No Injury

After two tries, Plaintiff Colucci's Amended Complaint still does not allege he bought a single ZonePerfect bar.  Rather, the only alleged purchases were made by Plaintiff Sethavanish, ostensibly acting "on [Colucci's] behalf" while he "was deployed as part of his service with the Marines."  (FCA ¶¶ 5-6.)  Because the only alleged injury pled in the complaint is based on "purchasing [ZonePerfect] Nutrition Bars . . . and/or by paying a premium for . . . 'All-Natural' Nutrition Bars over less expensive non-natural alternatives," (*id.* ¶ 69), Colucci suffered no injury. Colucci purchased no ZonePerfect bar and paid no purported premium.  He cannot meet either the Article III or the statutory standing requirements and should be dismissed as a plaintiff.

### 1.  *Plaintiff Colucci Lacks Article III Standing*

A party invoking federal jurisdiction, even when asserting state law claims in federal court, bears the burden of establishing the minimum requirements of constitutional standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009) (noting that plaintiff asserting state law claims in federal court "must also satisfy the federal standing requirement under Article III").  Among other elements, Article III standing requires that a plaintiff suffer an "injury-in-fact."  *Lujan*, 504 U.S. at 560.  The injury must be "concrete" and "particularized," not "conjectural or hypothetical."  *Id.*  That is, the party must "show he personally has suffered some actual or threatened injury."  *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 472 (1982).

Colucci has not suffered any injury at all, let alone "injury-in-fact."  After two tries and a motion to dismiss by Zone Perfect challenging this issue, Colucci still cannot plead he ever purchased a single ZonePerfect bar.  (*See* FAC ¶¶ 5-6.)  Colucci's complaint reveals he never paid *anything* for the bars, let alone the "premium" that his theory of harm is based on.  For this reason, Colucci has not, and cannot, established the minimum requirements for Article III standing to bring any of the causes of action set forth in the complaint.  All of Colucci's claims should be dismissed.

### 2.     *Plaintiff Colucci Lacks Statutory Standing Under California Law*

Colucci also lacks standing under the statutory provisions of his California state law claims. *First*, under the California Unfair Competition Law ("UCL"), "[a] plaintiff must have suffered an 'injury in fact and have 'lost money or property as a result of [the] unfair competition' to have standing to pursue either an individual or a representative claim under the [UCL]."  *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (Cal. Ct. App. 2008) (quoting Cal. Bus. & Prof. Code § 17204).  As above, because Colucci did not purchase any ZonePerfect bars, he cannot claim that he lost either money or property.  He therefore has not been injured for purposes of the UCL.  Colucci's second, third, and fourth causes of action, each arising under the UCL, should be dismissed.

*Second*, under California's Business and Professional Code §§ 17500 *et seq.* ("FAL"), a plaintiff must have lost "money or property" to have standing.  *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076-77 (N.D. Cal. 2011).  Again, Colucci does not allege, nor can he, that he lost "money or property" because he did not purchase any ZonePerfect bars.  Because he has not suffered any injury recognized by the FAL, Colucci's fifth cause of action should be dismissed.

*Third*, only a "consumer" can bring suit alleging a violation of the Consumer Legal Remedies Act ("CLRA").  Cal. Civ. Code § 1760 (West).  "Consumer" is defined as "an individual who seeks or acquires, *by purchase or lease*, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761 (West).  It is not sufficient for that purchase or lease to be made by another on behalf of the plaintiff.  *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (Cal. Ct. App. 2005) (finding that a divorced woman could not seek relief under the CLRA for claims regarding her engagement ring because, although she received the ring as a gift and was the legal owner, it was her ex-husband who actually made the purchase).  Here, Colucci is not a "consumer" under the CLRA because only Sethavanish, not Colucci, allegedly purchased the ZonePerfect bars.  (*See* FAC ¶¶ 5-6.)  The allegation that Sethavanish's purchases were ostensibly made on Colucci's behalf does not save Colucci's CLRA claim because he must have made the purchases himself and been a party to the transaction.  *See Schauer*, 125 Cal. App. 4th at 960.  Colucci alleges neither, and thus lacks standing to bring the sixth cause of action, which arises under

the CLRA.

**B.      Both Plaintiffs Lack Standing To Assert Claims For ZonePerfect Products That They Did Not Buy**

Plaintiffs allege that "[f]rom approximately September 2009 through April, 2010," and then from "December, 2010 until August of 2011, Ms. Sethavanish purchased multi-bar packs of ZonePerfect's [Chocolate] Peanut Butter flavor ZonePerfect nutrition bars for Mr. Colucci once every 4 to 6 weeks."  (FAC ¶ 6.)  After that, "Ms. Sethavanish . . . stopped buying ZonePerfect's nutrition bars *for* Mr. Colucci."  (*Id*.)  With two tries, an obligations to plead with specificity pursuant to Rule 9(b), *see infra* § V.E, and after ZonePerfect specifically raised this infirmity in its original motion to dismiss, Ms. Sethavanish still only pleads that she purchased a ***single*** specific type of ZonePerfect bar: the Chocolate Peanut Butter.  But Plaintiffs' complaint pleads and reflects that different ZonePerfect bars are distinct in their flavors, ingredients, and nutritional content.  (*See id*. ¶ 44 (listing varieties of ZonePerfect bars and their different mix of ingredients).)  Each variety of ZonePerfect will therefore require a distinct factual inquiry into issues and ingredients not raised by the product that Ms. Sethavanish actually purchased.  Yet Sethavanish and Colucci purport to assert claims concerning every different nutrition bar that ZonePerfect makes—even those Sethavanish never bought.  Absent purchases (and thereby "actual or threatened injury") of these other nutrition bars, neither Colucci nor Sethavanish have standing—constitutional or statutory—to pursue claims based on the labeling of these other products.  *Valley Forge*, 454 U.S. at 472.  At best, the only purported "injury" that Ms. Sethavanish suffered and has standing to pursue relates solely to the Chocolate Peanut Butter flavor bar.

California federal courts have repeatedly denied similar attempts to broadly assert claims across a range of related products.  Where plaintiffs have not purchased all the products they attempt to put at issue, courts have found that such plaintiffs lack standing to pursue claims against the additional products, even if they purchased a related product ***with the same purported defect***.  *Mlejnecky v. Olympus Imaging Am. Inc*., 2011 WL 1497096, at *4 (E.D. Cal. 2011) (finding that plaintiff  could only assert false advertising claims against the ***particular camera model*** she ***actually bought***, and dismissing plaintiff's claims directed to a related model that plaintiff never purchased,

1    even though it allegedly including the same purported defect); *Johns v. Bayer Corp.*, 2010 WL

2    476688, at \*5 (S.D. Cal. 2010) ("[Plaintiff] cannot expand the scope of his claims to include a

3    product he did not purchase or advertisements relating to a product that he did not rely upon.").

4         This Court should dismiss Plaintiffs' claims as they pertain to all ZonePerfect products other

5    than the Chocolate Peanut Butter products that Ms. Sethavanish actually purchased.   In particular,

6    ZonePerfect respectfully requests that the Court dismiss and/or strike paragraphs 24, 26, 28, 29,

7    44(a)-(e) and (g)-(r), and the relevant portions of paragraphs 56, 62, and 63, each pertaining to non-

8    Chocolate Peanut Butter ZonePerfect products and ingredients, which neither plaintiff has standing

9    to pursue.  (*See* FAC ¶ 4(f) (listing certain ingredients of ZonePerfect Chocolate Peanut Butter Bar.)

10       **C.**    **All of Plaintiffs' Claims Should Be Dismissed Because Plaintiffs Fail To Plausibly Allege That ZonePerfect Bars Are Not "Natural" Under FDA Policy**

11

12        Plaintiffs' lack of standing aside, Plaintiffs' complaint should be dismissed with prejudice for

     failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

13        ***1.***    ***Plaintiffs Failed To Include Sufficient Factual Allegations To Establish That ZonePerfect's Products Are Not "Natural"***

14

15        Every single cause of action in Plaintiffs' complaint arises from, and is based on, the theory

16   that ZonePerfect bars are not "natural" and wrongly labeled "All-Natural."   (*See* FAC ¶ 74 ("This

17   identical conduct [labeling ZonePerfect bars "All Natural"] also serves as the ***sole factual basis of***

18   ***each cause of action*** brought by this First Amended Complaint[.]").)   But with two tries, Plaintiffs

19   still have not (and obviously cannot) allege facts sufficient to establish that ZonePerfect bars are not

20   "natural" under the standard they admit is applicable to the labeling of food products like

21   ZonePerfect: the FDA's "natural" policy.  Specifically, the FDA policy that the Plaintiffs expressly

22   rely on to plead their claims states that "natural" is construed "as meaning that nothing artificial or

23   synthetic (including all color additives regardless of source) has been included in, or has been added

24   to, a food ***that would not normally be expected to be in the food***."  (FAC ¶ 14 (*quoting* 58 Fed. Reg.

25   2302, 2407 (Jan. 6, 2003)).)   Contrary to Plaintiffs' misreading, it is ***not*** an FDA requirement that

26   food products contain nothing "artificial" or "synthetic" to be labeled as "natural."    Rather, that

27   policy must be read in its entirety to include the modifying phrase "that would not normally be

28   expected to be in the food."   Plaintiffs entirely ignore this critical language, instead wrongly

---

asserting that "a product is *not* natural if it contains color, artificial flavors, or synthetic substances." (*Id*. (emphasis in original).)  This self-serving interpretation of the FDA policy wrongly reads out of the policy the final phrase "that would not normally be expected to be in the food," creating a standard for "natural" labeling higher than that issued by the FDA (and which Plaintiffs know would be preempted by federal law).  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 928-29 (9th Cir. 2004) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").  Plaintiffs' reading of this policy is facially wrong.  A product's ingredients are not "natural" *only* if sufficient facts pled plausibly show that those ingredients—categorized by U.S.D.A. as natural, artificial, "synthetic," or otherwise—would not "normally be expected to be in the food."  Plaintiffs did not plead such facts.

### a.     These Ingredients Are Normally Permitted In Organic Products

One indication that ZonePerfect's ingredients would all normally be expected in nutrition bars is that the U.S.D.A. permits most of these so-called "synthetic" ingredients to be included in *organic* products—notwithstanding the fact that the U.S.D.A. organic regulations refer to them as "synthetic."  7 C.F.R. § 205.605(b).  Notably, in determining what "synthetic" ingredients may permissibly be included in organic products, the U.S.D.A. considers a variety of factors, including whether the ingredients are safe or necessary, and "the alternatives to using the [ingredient] in terms of practice."  7 U.S.C. § 6518(m)(4) and (6).  Thus, the very fact that most of these so-called "synthetic" ingredients are on the acceptable-for-organics list proves the common "practice" of using them in food, *see id.*, and the expectation that such ingredients would normally be used in food.

Plaintiffs' complaint also refers to the U.S.D.A.'s Guidelines on "natural" labeling, which require the qualification of "natural" claims in certain circumstances.  (FAC ¶¶ 16–19.)  This discussion is a red herring.  These regulations apply only to the labeling of meat and poultry regulated by U.S.D.A.  Plaintiffs' complaint admits that FDA policy alone serves as the basis for their claims.  (*Id.* ¶ 74.)  Thus, the distinction between the obligations imposed under the U.S.D.A.'s guidelines for "natural" and those imposed under the FDA policy actually *refutes* Plaintiffs'

argument that they have pled a plausible claim for relief by invoking U.S.D.A. categorizations. As a comparison of the two sets of guidelines makes clear, FDA has adopted a policy on "natural" labeling that differs from the U.S.D.A.'s guidelines in significant respects. Lacking jurisdiction over the products at issue in this complaint, U.S.D.A. requirements and characterizations for meat and poultry products (such as what will be categorized as a "synthetic" in that context) does not and cannot address the application of FDA Policy, nor serve as a plausible basis to assert that FDA policy has been violated by ZonePerfect's labeling.

              b.        *"Natural" Food Retailers Advertise And Sell Products That Contain These Ingredients*

ZonePerfect bars, and other products with the same ingredients that Plaintiffs challenge, are regularly sold at "natural" and organic retail stores like Whole Foods and Trader Joe's. This further establishes that **all** of the ingredients contained in ZonePerfect Bars are normally expected in products labeled as "natural," and, thus, that Zone Perfect **is** an "All Natural Nutrition Bar." For example, Whole Foods, which sells only "the highest quality natural and organic products," tells its customers that "[w]e carry natural and organic products because we believe that food in its purest state—unadulterated by artificial additives, sweeteners, colorings, and preservatives—is the best tasting and most nutritious food available." (Ex. 1: Whole Foods "Quality Standards" webpage.)[3] To that end, Whole Foods "evaluate[s] each and every product [they] sell," "feature[s] foods that are free of artificial preservatives, colors, flavors, sweeteners, and hydrogenated fats," and "maintains an extensive list of unacceptable ingredients." (*Id.*) If a product contains one of these prohibited ingredients, Whole Foods does not consider it "natural" and won't sell it. Critically—and not surprisingly given the qualifications necessary to be considered acceptable by the "organics" regulations that Plaintiffs reference—**none** of the ingredients catalogued in Plaintiffs' complaint are found on the "unacceptable ingredient" list of Whole Foods, meaning they are permissibly included in Whole Foods' "natural" and "organic" food products sold in Whole Foods stores. (*See* Ex. 2: Whole Foods "Unacceptable Ingredients" List (cataloguing unacceptable ingredients for "natural" products).)

_____

[3] All referenced Exhibits are attached to ZonePerfect's Request for Judicial Notice.

Besides ZonePerfect bars, Whole Foods regularly sells all manner of food products containing the "synthetic" ingredients that Plaintiffs identify in their complaint.  For example, Whole Foods sells Luna's Protein Mint Chocolate Chip bar, which contains alkalized cocoa, ascorbic acid, pyridoxine hydrochloride, and glycerine.  (Ex. 3: Whole Foods product page for Luna Protein Mint Chocolate Chip bar.)   It also sells the Emergen-C O-Series, Island Fruit Breeze flavor, which contains ascorbic acid, potassium carbonate, calcium phosphate, pyridoxine hydrochloride, and calcium pantothenate.  (Ex. 4: Whole Foods product page for Emergen-C O-Series, Island Fruit Breeze.)

Likewise, Trader Joe's, another "natural" retailer, carries ZonePerfect bars, as well as other products that contain the supposedly synthetic ingredients that Plaintiffs identify.  Nevertheless, Trader Joe's states that "[a]ll products in the Trader Joe's label promise: NO artificial flavors, colors or preservatives" and "NO genetically modified ingredients."  (Ex. 5: Trader Joe's "Products & Guides" webpage).  These practices further establish that these so-called "synthetic" ingredients are widely-regarded as acceptable in foods labeled as "natural" and "normally expected" to be there— entirely consistent with FDA policy.

> c.    *Plaintiffs Acknowledge That Each of The Allegedly "Synthetic" Ingredients Are Commonly Used And Expected To Be In Food*

Plaintiffs' own complaint also reveals that many of the ingredients they claim to be concerned about are common.  (*See* FAC ¶¶ 22-31.)  Therefore, consumers and the industry would normally expect these ingredients to be found in food—particularly a "Nutrition Bar" like ZonePerfect.  For example, Plaintiffs concede that ascorbic acid is nothing more than a form of vitamin C—an essential nutrient which is "used in foods as an antioxidant and as a preservative." (*Id.* ¶ 22).  Similarly, Plaintiffs acknowledge that Calcium Pantothenate is "one of the vitamins in the B complex."  (*Id.* ¶ 23.)  Pyridoxine Hydrochloride is used to provide "vitamin B6 supplements." (*Id.* ¶ 27.)  It defies logic to suggest that such nutrients would not "normally be expected to be" added to a "Nutrition Bar" like ZonePerfect.  Plaintiffs' complaint similarly concedes that the other ingredients at issue are common and normally expected to be in such foods:  disodium phosphate "is ***used in foods for a variety of purposes***, including enhancing the texture of food, as an emulsifier,

and as a leavening agent" (*id.* ¶ 28); glycerine "is *used in some food products* as a sweetener, as a preservative, or as a thickening agent" (*id.* ¶ 25); sorbitan monostearate is "*often used*" in a variety of food products (*id.* ¶ 29); and xanthan gum "is *typically used* as a thickening or stabilizing agent in beverages, and as an emulsifier in salad dressings" (*id.* ¶ 31).

Moreover, Plaintiffs specifically plead that consumers do read and use ingredient labels. (*Id.* ¶ 33.) Thus, Plaintiffs cannot dispute that consumers have come to expect that after decades of reading product labels for "natural" products containing these so-called "synthetic" ingredients— ingredients that even Plaintiffs' Amended Complaint concedes add essential nutrition, stability, safety, and value to these products and ensure they are "healthier," just as Plaintiffs say they wished them to be (*id.* ¶¶ 22-31)—would, even if "synthetic," normally be found in "natural" labeled "nutrition bars" like ZonePerfect.

> d.   The Sheer Litany Of "All-Natural" Complaints Indicates The Widespread Use Of These Ingredients

As the cases docketed in the Northern and Southern Districts of California alone show, these plaintiffs and their counsel have filed an ever-growing number of these "natural" complaints against food manufacturers and retailers using the same strained theory. The sheer number of these "natural" litigations purporting to suddenly "enforce" the FDA policy—after nearly twenty-five years of that policy's existence[4]—is further evidence that the ingredients at issue in these cases are "normally expected" to be found in foods labeled as "natural." These cases repeatedly cite and cycle through the same list of ingredients. But rather than suggest that these ingredients are not "natural," these cases and the widespread use of these ingredients evidence the acceptance and inclusion of these ingredients in naturally-labeled food products. For example, the following companies have been hit with a lawsuit like this in the last eighteen months alone:

| Case Caption | Case Number / Court | Date Filed | Products | Accused Ingredients |
|---|---|---|---|---|
| Sethavanish v. Balance Bar Co. | 4:11-cv-4547 N.D. Cal. | 9/13/2011 | Balance Bar Energy Bar Products | Ascorbic Acid, Alkalized cocoa, Glycerine, Disodium Phosphate and Xanthan Gum |

---

[4] *See* 58 Fed. Reg. 2302, 2407, 2409 (Jan. 6, 1993) (referencing 1988 letter from Raymond E. Newberry, Acting Director of the Division of Regulatory Guidance).

| Case Caption | Case Number / Court | Date Filed | Products | Accused Ingredients |
|---|---|---|---|---|
| Astiana v. Dreyer's Grand Ice Cream, Inc. | 3:11-cv-02910 N.D. Cal. | 6/14/2011 | Dreyer's Ice Cream Products | Alkalized Cocoa (processed with Potassium Carbonate) |
| Bates v. Kashi Co., Kellogg Co., et al. | 3:11-cv-1967 S.D. Cal. | 8/24/2011 | Cereal, Shakes, Granola Bars, Cookies, Snack Bars, Waffles, Pizza, and Crackers | Bromelain, Calcium Carbonate, Calcium Caseinate, Calcium Chloride, Calcium Pantothenate, Calcium Phosphate, Calcium Stearate, Disodium Phosphate, Ferrous Fumarate, Glycerin, Lactic Acid, Magnesium Phosphate, Malic Acid, Magnesium Oxide, Maltodextrin, Niacinamide, Pectin, Plant Sterols, Potassium Bicarbonate, Potassium Carbonate, Potassium Chloride, Potassium Iodide, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Molybdate, Sodium, Selenite |
| Chatham v. Kashi Co., Kellogg Co. | 3:11-cv-2285 S.D. Cal. | 10/3/2011 | Cereal, Shakes, Granola Bars, Cookies, Snack Bars, Waffles, Pizza, and Crackers | Soy Protein Isolate, Textured Soy Protein, Soy Grits, Soy Protein Concentrate, Soy Flour, Toasted Soy Grits, Ascorbic Acid, and Soy Lecithin. |
| Sethavanish v. Kashi Co. | 3:11-cv-2356 S.D. Cal. | 9/7/2011 | GoLean Protein and Fiber bars | Ascorbic Acid, Disodium Phosphate, Glycerin, Monocalcium Phosphate, Alkalized Cocoa, Sodium Acid Pyrophosphate, Sodium Citrate, and Xantham Gum. |
| Bonar v. Beam Global Spirits & Wine, Inc. | 3:11-cv-2058 S.D. Cal. | 9/6/2011 | Margarita Bottled Drink Products | Sodium Benzoate |
| Astiana v. Ben & Jerry's Homemade, Inc. | 10-cv-4387 N.D. Cal. | 9/29/2010 | Ben & Jerry's Ice Cream Products | Alkalized Cocoa (processed with Potassium Carbonate) |
| Thurston v. Conopco, Inc. [Unilever] d/b/a Breyer's | 3:10-cv-4937 N.D. Cal. | 11/1/2010 | Breyer's Ice Cream Products | Alkalized cocoa (processed with Potassium Carbonate) |

| Case Caption | Case Number / Court | Date Filed | Products | Accused Ingredients |
|---|---|---|---|---|
| Thurston v. Bear Naked Inc. | 3:11-cv-04678 N.D. Cal. | 9/21/2011 | Bear Naked Granola and Trail Mix Products | Alkalized Cocoa ( processed with Potassium Carbonate), Glycerin, and Lecithin |
| Larsen v. Nonni Foods, LLC | 4:11-cv-4758 N.D. Cal. | 9/23/2011 | Nonni's Biscotti Products | Alkalized Cocoa, Glycerin, Monocalcium Phosphate, Sodium Acid Pyrophosphate, Monoglycerides, and Diglycerides |
| Larsen v. Trader Joe's Company | 3:11-cv-5188 N.D. Cal. | 10/24/2011 | Trader Joe's Brand Labeled Food Products | Ascorbic Acid, Potassium Carbonate, Sodium Acid Pyrophosphate, Sodium Citrate, Xanthan Gum, Vegetable Monoglyceride, and Vegetable Diglyceride |
| Larsen v. King Arthur Flour Company, Inc. | 3:11-cv-05495 N.D. Cal. | 11/14/2011 | King Arthur's Flour Mixes | Ascorbic Acid, Disodium Phosphate, Monocalcium Phosphate, Potassium Carbonate, and Sodium Acid Pyrophosphate. |

The sheer number of these complaints recently filed over these same ingredients used in naturally-labeled foods across the food industry shows that it is *not* the food industry at fault. Rather, this explosion of litigation shows that these ingredients *are* "normally expected to be found" in these foods—a critical issue not raised with prior courts considering these cases—and that pleading their use fails to establish that food products containing them are not "natural."

\*     \*     \*

In sum, Plaintiffs have failed to satisfy their burden and plead facts sufficient to establish an essential element of their claims. Plaintiffs' conclusory allegation that the product is not "natural"— a legal conclusion derived from the factual standards in the FDA policy they seek to enforce—is not entitled to the presumption of truth. *Iqbal*, 129 S. Ct. at 1949-50. And, fatal to their complaint, Plaintiffs plead no facts showing that any of the ingredients found in the ZonePerfect bars, including the so-called "synthetic" ingredients identified, would *not* be normally expected to be in the food— an essential element to meeting the legal definition of "natural" under FDA Policy. Merely pleading these ingredients are referred to as "synthetics" by U.S.D.A. or other sources is insufficient to state a claim for relief—particularly where the facts pled show that *every single ingredient* used in the

ZonePerfect bars **would** normally be expected to be in the food.  Plaintiffs' defect is **not** curable—especially considering Plaintiffs have already amended their complaint once after ZonePerfect's original motion.  As a result, their pleading is deficient and inadequate, and merits dismissal with prejudice under 12(b)(6).

### 2.      Plaintiffs' Claims Are Preempted By Federal Law

In addition to the implausibility of Plaintiffs' allegations as pled, the FDA's current regulatory scheme also **expressly** preempts Plaintiffs' claims because they are based on supposed "omissions" of information that federal labeling law does not require.  In other words, knowing that the labeling on the ZonePerfect bars are appropriate and consistent with federal law, Plaintiffs nevertheless suggest that ZonePerfect **omitted** certain information that should have been added to ZonePerfect's labels.  This creates a standard inconsistent with federal law and is preempted.

The Federal Food, Drug, and Cosmetic Act ("FDCA") promulgated a comprehensive statutory framework of food-labeling requirements designed to ensure that consumers have relevant information regarding the ingredients and nutritional content of the foods they purchase.  21 U.S.C. § 341 *et seq*.  The Nutrition Labeling and Education Act of 1990 ("NLEA"), amended the FDCA and supplemented the FDA's food-labeling regulatory scheme.  Pub. L. No. 101–535, 104 Stat. 2353 (1990).  21 U.S.C. § 343(q)(1).  The NLEA also includes a broad **express** preemption provision, prohibiting states from "directly or indirectly establish[ing]" any labeling requirement "that is not identical to" the labeling provisions in the FDCA.  21 U.S.C. §§ 343-1(a)(3)-(4).  The relevant labeling provisions covered by the express preemption provision include § 403(q) (codified as 21 U.S.C. § 343(q)), which sets forth the FDA's requirements concerning information that a food label must contain.  And "not identical" in the express preemption provision is strictly construed; the provision precludes states from imposing obligations that are "beyond, or different from, what federal law requires."  *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig*., 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).  Indeed, any obligation that is "not imposed by or contained in the applicable provision" or which "[d]iffer[s] from those [obligations] specifically imposed by or contained in the applicable provision" is expressly preempted and *may not be enforced*.  21 C.F.R. §§ 100.1(c)(4)(i)-(ii).

Although states are barred from requiring labeling disclosures beyond those set out by federal law, Plaintiffs fault ZonePerfect for certain labeling **omissions**, by failing to include disclosures on its labels that certain ingredients are referred to as "synthetic" in U.S.D.A. organic regulations.  (*Id*. ¶ 62 ("ZonePerfect's . . . labels uniformly did not disclose generally that the Nutrition Bars contained ingredients that are synthetic or artificial."); *see also id.* ¶¶ 50-52, 63, 66-67.)  ZonePerfect's alleged failure to meet this labeling requirement, repeated throughout Plaintiffs' complaint, underlies all of Plaintiffs' claims.  (*See*, *e.g.*, *id*. ¶¶ 5, 6, 41, 62).  But critically, 21 U.S.C. § 343(q)—which applies to the labeling of nutrition bars like Zone Perfect—**does not require** that food manufacturers label their ingredients or products as "synthetic" once they've been listed on the ingredient panel.  And there is no dispute that ZonePerfect's so-called "synthetic" ingredients were disclosed on the ingredient panel in accordance with the FDA regulations.  (*See*, *e.g.*, *id*. ¶ 2.)

By bringing a claim based on this supposed non-disclosure, Plaintiffs' complaint would use California state law to create labeling requirements that are **not identical** to those set forth by the FDA framework—but rather well "beyond" and "different from" them.  *See PepsiCo*, 588 F. Supp. 2d at 532.  Because Plaintiffs' claims impose a state-law obligation for food labeling disclosure— that certain ingredients be disclosed as "synthetic" or "artificial" if used in a "natural" product—that is not required by federal law, these claims are expressly preempted by the NLEA and should be dismissed.  *See*, *e.g.*, *Turek v. Gen. Mills, Inc*., 662 F.3d 423, 427 (7th Cir. 2011) (holding that plaintiffs' claims were expressly preempted under 21 U.S.C. § 343-1(a) because the FDA mandated disclosure only of the amount of dietary fiber in the food product; there was no obligation to disclose whether or not the fiber was "natural"); *Degelmann v. Advanced Med. Optics Inc.*, 659 F.3d 835, 842 (9th Cir. 2011) (holding UCL and FAL claims preempted because FDA requirement for labeling claim was lower than plaintiffs' claims would have imposed).[5]

---

[5] Although Judge Hamilton rejected an alternate preemption argument in *Astiana v. Ben & Jerry's*, another "natural" case, she focused on whether the FDA's regulations covered the labeling of foods as "natural."  2011 WL 2111796, at *10 (N.D. Cal. 2011).  Here, by contrast, Plaintiffs allege that ZonePerfect's ingredients list, a requirement expressly covered by the FDA's regulations, (*see* 21 U.S.C. § 343(q)(1)), was faulty because it did not disclose certain ingredients as "synthetic."

### 3. *Plaintiffs' Failure To Plead Facts Sufficient To Establish That ZonePerfect Bars Are Not "Natural" Requires Dismissal Of All Plaintiffs' State Law Claims*

Plaintiffs allege that the labeling of ZonePerfect products "All Natural" "serves as the sole factual basis of each cause of action brought by this First Amended Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDA Policy concerning what is 'natural.'" (FAC ¶ 74.) Thus, even if one assumes that ZonePerfect contains certain "synthetic" ingredients—an issue which ZonePerfect does not concede—Plaintiffs' failure (and inability) to allege that these ingredients would not normally be expected to be found in food renders every single one of its state law claims facially deficient. As a result, all of these claims should be dismissed with prejudice.

*First*, Plaintiffs' Second Cause of Action must be dismissed. Under the UCL, an individual can assert a claim for any "unlawful" act or practice, and a business act of practice is unlawful if it violates state or federal law. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007). Plaintiffs allege that ZonePerfect's branding of its bars as "natural" violates California's "Sherman Law" as a false or misleading branding of food. (FAC ¶¶ 73-74.) But because Plaintiffs have failed to allege facts showing that the branding of ZonePerfect bars as "natural" is either false or misleading under the FDA policy (the standard they concede applies and they are asserting (*id.* ¶ 74)), their complaint does not "contain sufficient factual matter" to assert a plausible claim for an "unlawful" business practice under the UCL. *Iqbal*, 129 S. Ct. at 1949.

*Second*, Plaintiff's Third Cause of Action merits dismissal. Under the UCL, an individual may assert a claim based on an "unfair" business practice. Cal. Bus. Prof. Code § 17200. A business practice is "unfair" if the gravity of the alleged harm outweighs the utility of the defendant's conduct. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 973 (N.D. Cal. 2010).[6] Here, Plaintiffs assert that they purchased a product they thought was "natural" when it purportedly was not because the ZonePerfect bars' packaging included a "misleading description."

---

[6] Though there are two competing lines of authority defining "unfair" business practice under the UCL, *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 973 (N.D. Cal. 2010), Plaintiffs' allegations fail under either standard. Because the alternative standard looks to whether conduct violates specific false advertising statutes, there can be no unfair business practice where ZonePerfect's "natural" labels are not false, but rather are consistent with FDA policy.

(FAC ¶ 80.)  Here too, Plaintiffs have not alleged facts sufficient to establish that the "natural" label was either false or misleading because the complaint and other facts the Court may judicially notice establish that, consistent with the FDA standard, these ingredients are normally expected to be found in foods.  Thus, there is no "unfair" business practice, and Plaintiffs' complaint fails to state a plausible claim under this prong of the UCL.

*Third*, Plaintiffs' Fourth Cause of Action should be dismissed.  Under the UCL, an individual may assert a claim based on a "fraudulent" business practice.  Cal. Bus. Prof. Code § 17200.  Determining whether a business practice is fraudulent requires a showing that reasonable members of the public "are likely to be deceived."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).  Plaintiffs assert that ZonePerfect's "all-natural" label causes consumers to "believe[] the products are something they are not."  (FAC ¶ 85.)  But Plaintiffs have failed to offer sufficient factual allegations to establish that the bars are not "natural" under the FDA standard.  As a result, Plaintiffs have failed to establish that consumers were or could be deceived, and their Fourth Claim for relief under the "fraudulent" business practice prong of the UCL warrants dismissal.

*Fourth*, Plaintiffs' FAL claim merits dismissal.  The FAL prohibits "untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17500 (West).  Plaintiffs allege that ZonePerfect's "labels are misleading and likely to deceive" because they advertise the bars as "all-natural."  (FAC ¶ 89.)  Here too, Plaintiffs fail to allege facts sufficient to show that the ZonePerfect bars are not "natural" within the meaning of the FDA standard upon which they rely.  Consequently, advertising the bars as "all-natural" cannot be untrue or misleading, and the complaint fails to state a plausible claim under the FAL, and Plaintiffs' Fifth Cause of Action should be dismissed.

*Fifth*, the Plaintiffs' CLRA claim should be dismissed.  The CLRA prohibits the use of "unfair methods of competition" and "unfair or deceptive acts or practices" in a consumer transaction.  Cal. Civ. Code § 1770(a) (West).  Plaintiffs allege that, due to the ZonePerfect bars' "all-natural" labels, ZonePerfect (1) represented that "the transaction had characteristics which it did not have"; (2) represented that its goods "were of a particular standard, quality, or grade, which they were not"; and (3) "advertised its goods . . . with the intent not to provide what it advertises."  (FAC ¶ 99.)  But the basis of the Plaintiffs' claim is an alleged inconsistency with the FDA's standard for

"natural." And in merely pleading that ZonePerfect did not disclose that its ingredients appear on the acceptable "synthetics" list for organic products, Plaintiffs did not allege facts sufficient to establish that ZonePerfect bars are not "natural"—the basis of their allegation of "unfair methods of competition" and "unfair or deceptive acts or practices." Accordingly, Plaintiffs' Sixth claim does not state a claim for relief under the CLRA.

**Sixth**, Plaintiffs have failed to adequately plead common law fraud under their First Cause of Action. To the extent that Plaintiffs' common law fraud claim is based on the labeling of ZonePerfect bars as "natural," Plaintiffs fail to allege facts sufficient to state a claim. In California, fraud requires a "misrepresentation." *Kearns*, 567 F.3d at 1126. Yet because Plaintiffs do not allege facts sufficient to show that the allegedly "synthetic" ingredients would not "normally be expected to be" in the ZonePerfect bars, they have failed to show that the "all natural" label is inconsistent the FDA policy. Consequently, there is no misrepresentation, and Plaintiffs have failed to adequately plead common-law fraud.

Moreover, to the extent that Plaintiffs' common law fraud claim is based on fraudulent concealment (FAC ¶¶ 50-52), Plaintiffs also fail to state a claim on which relief can be granted. Fraudulent concealment requires that the Plaintiffs allege, in part, that "the defendant was under a duty to disclose the [concealed] fact to the plaintiff." *Sanders v. Apple Inc*., 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009). But there is no duty to disclose information that is publicly available. *See Clayton v. Landsing Pac. Fund Inc*., 2002 WL 1058247, at *6 (N.D. Cal. 2002) (dismissing fraudulent concealment claim because the allegedly concealed information was publicly available), *aff'd*, 56 F. App'x 379 (9th Cir. 2003); *see also Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1544 (Cal. Ct. App. 1998) ("Generally, where one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known or reasonably discoverable by the other party, then a duty to disclose exists."). Here, Plaintiffs allege that ZonePerfect "had a duty to disclose" that certain listed ingredients are referred to as "synthetic" on the USDA's regulations for acceptable organic ingredients. (FAC ¶ 63.) Plaintiffs concede, however, that every bar appropriately discloses the presence of each "synthetic" ingredient in their products in accordance with federal regulations. (*See*, *e.g.*, *id.* ¶¶ 2, 41, 62.) Moreover, information regarding the precise nature of these ingredients

is so widely and publicly available that no food manufacturer has a duty to disclose that information. (*See, e.g.*, Exs. 6–8: Wikipedia entries for "Xanthan Gum," "Disodium Phosphate," and "Ascorbic Acid").  In effect, Plaintiffs have pled only ignorance of the relevant information, not concealment. But **actual** concealment is required to assert an actionable claim.  *Sanders*, 672 F. Supp. 2d at 985. Accordingly, there was no duty to disclose, and the Court should dismiss and/or strike Plaintiffs' fraudulent concealment allegations.

### D. Plaintiffs Failed To Plead Fraud With The Requisite Particularity

Underlying each of Plaintiffs' first through sixth causes of action, including its claims made under the UCL (second, third, and fourth causes of action), the FAL (fifth cause of action), the CLRA (sixth cause of action), and common law fraud (first cause of action) claim, is the purportedly misleading labeling of the ZonePerfect bars.  (FAC ¶ 2.)  This supposed mislabeling is an allegation of fraud, and such fraud-based allegations must be pled with specificity pursuant to Rule 9(b).  *See Kearns*, 567 F.3d at 1125 (applying Rule 9(b) to UCL and CLRA actions where the allegations sound in fraud); *Marolda*, 672 F. Supp. 2d at 1005 (requiring FAL claim to be pled with specificity). Rule 9(b) requires that, "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).

The allegations made in Plaintiffs' complaint fail to satisfy Rule 9(b).  Although Plaintiffs allege the underlying fraud involves the inclusion of the "All Natural" statement on the Nutrition bars' packaging, (FAC ¶ 42), Plaintiffs never adequately allege "how" or "why" the "All Natural" label rendered the bars' packaging misleading.  Their attempt is deficient because they do not set forth how the bars "[fell] short of [their] advertised quality"—*i.e.*, how the possible presence of synthetic ingredients renders the bars not natural.  *Wang*, 276 F.R.D. at 628.  As detailed above, the FDA policy on "natural" products—which the plaintiffs put forward as the boundary of their claims—has two elements: that an ingredient be both (1) synthetic and (2) "not normally [] expected to be in the food."  Plaintiffs' complaint does not allege the "what" and the "how" of that second legal element, *i.e.*, "how" and "why" ingredients such as ascorbic acid (Vitamin C) would not normally be expected to be in a **nutrition** bar.  To the contrary, Plaintiffs' complaint expressly recognizes that these ingredients would normally be expected to be found in such foods.  (*See, infra*,

Sec. IV.C.1.c; FAC ¶¶ 22- 31.)  Thus, Plaintiffs' "insufficiently pled averments of fraud [should be] disregarded", *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003), and their first through sixth causes of action should be dismissed for failure to allege fraud with the particularity required by Rule 9(b).

### E.    Plaintiffs' Failure To Satisfy The CLRA Notice Requirement Necessitates Dismissal With Prejudice

Plaintiffs' CLRA claim is also procedurally deficient.  Section 1782(a) of the CLRA requires that "thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall . . . notify the person alleged" to have violated the CLRA of "the particular alleged violations," and "demand that the person . . . rectify" those violations.  Cal. Civ. Code § 1782 (West).  "[C]ompliance with this requirement is necessary to state a claim."  *Cattie v. Wal-Mart Stores, Inc*., 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).  Failure to comply with the CLRA's notice requirement "necessitates dismissal with prejudice."  *Id.* at 950; *Davis v. Chase Bank U.S.A., N.A*., 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *15 (N.D. Cal. 2009); *Janda v. T-Mobile, USA, Inc*., 2008 WL 4847116, at *6 (N.D. Cal. 2008).  Later notice and amendment cannot cure an initial failure to comply with the notice requirement.  *Cattie*, 504 F. Supp. 2d at 950 ("Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement."); *Laster v. T-Mobile USA, Inc*., 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) ("[T]he Legislative goals would be eviscerated if consumers were allowed to sue for damages without first providing the statutorily mandated period for remediation."), *aff'd*, 252 F. App'x 777 (9th Cir. 2007); *see also Davis*, 650 F. Supp. 2d at 1089.

Plaintiffs purported to satisfy the CLRA's notice requirement when they sent a letter to ZonePerfect on August 30, 2011, alleging that ZonePerfect violated § 1770(a)(5) of the CLRA because its nutrition bars were labeled as "all natural" while containing the allegedly "synthetic" ingredient potassium carbonate.  (Ex. 9: Letter from Janet Lindner Spielberg, August 30, 2011.)  But Plaintiffs failed to wait the requisite thirty days before commencing an action for damages.  Instead, on September 14, 2011, Plaintiffs filed the initial Complaint in this matter, alleging violations of §

1770(a)(5) of the CLRA, but also of §§ 1770(a)(7) and (9)—allegations about "synthetic" ingredients that were not included in the initial CLRA notice letter. (9/14/2011 Complaint, D.I. 1, ¶ 71.)  That initial complaint sought monetary relief in the form of "restitution," "compensatory damages," "punitive damages," "attorneys' fees," and "an accounting."  (*Id.* at 21-22 ("Prayer" section).)  This conduct doomed the Plaintiffs' CLRA claim.  The Plaintiffs were obligated to provide at least thirty days notice before filing a suit for damages, but they did not.  And the Plaintiffs were obligated to detail all of the particular alleged violations of § 1770 in their CLRA notice, but they did not, failing to reference violations of §§ 1770(a)(7) or (9).

The Plaintiffs subsequently sent an additional letter and filed their amended complaint which contained the same allegations, namely that ZonePerfect bars' "All Natural" labels violate §§ 1770(a)(5), (7), and (9) of the CLRA because the bars contain allegedly "synthetic" ingredients. (FAC ¶ 99.)  But that additional letter, sent prior to the Plaintiffs' First Amended Complaint, cannot save Plaintiffs' claims.  Plaintiffs concede that the same ingredients referenced in the second notice letter were on ZonePerfect's label at the time of their ***original*** CLRA letter, and that they prematurely filed their complaint.  (*Id.* ¶ 2.)  Nothing in the CLRA permits potential plaintiffs to play "gotcha" with defendants and later send notice about issues they could and should have raised before initiating litigation.  Rather, later notice and amendment "would destroy the notice requirements utility," and cannot cure an initial failure to comply with the notice requirement.  *Cattie*, 504 F. Supp. 2d at 950.  This simple fact remains: No notice of the three alleged violations of § 1770 was given more than thirty days before the Plaintiffs initiated this litigation in September of 2011.  That is impermissible and in direct violation of § 1782(a) of the CLRA.  The Plaintiffs thereby forfeited any relief under the CLRA, and that claim consequently warrants dismissal with prejudice.

### F.    Plaintiffs Failed To State A Claim for Unjust Enrichment

Plaintiffs' seventh cause of action purports to assert a claim for "unjust enrichment." However, there is no independent claim for unjust enrichment in California.  *Smith v. Ford Motor Co.*, 2011 WL 6322200, at *3 (9th Cir. 2011) ("Plaintiffs also appeal the district court's ruling that unjust enrichment is not an independent cause of action in California. This argument has no merit."); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (Cal. Ct. App. 2008) ("Unjust enrichment is

1  not a cause of action.")[7]   Moreover, "plaintiffs cannot assert unjust enrichment claims that are

2  merely duplicative of statutory or tort claims."  *In re Apple and AT&T Unlimited Data Plan Litig.*,

3  802 F. Supp. 2d at 1077.  Again, Plaintiffs admit that the "identical conduct" of labeling ZonePerfect

4  bars as "All Natural" "serves as the **sole factual basis of each cause of action** brought by this First

5  Amended Complaint[.]"  (FAC ¶ 74.)  Because California courts do not recognize an independent

6  cause of action for unjust enrichment, and because Plaintiffs' unjust enrichment claim is merely

7  duplicative of its statutory and tort claims, Plaintiffs' seventh cause of action should be dismissed.

8  **V.      CONCLUSION**

9          For the reasons stated above, ZonePerfect respectfully requests that the Court dismiss the

10  complaint in its entirety with prejudice.

11  DATED:  March 30, 2012                     Respectfully submitted,

12                                             /s/ *Jonathan D. Brightbill*
                                               Elizabeth L. Deeley (SBN 230798)
13                                             elizabeth.deeley@kirkland.com
                                               KIRKLAND & ELLIS LLP
14                                             555 California Street
                                               San Francisco, California  94104
15                                             Telephone: (415) 439-1400
                                               Facsimile: (415) 439-1500
16

17                                             Gregg F. LoCascio, P.C. (*pro hac vice pending*)
                                               gregg.locascio@kirkland.com
18                                             Jonathan D. Brightbill (*pro hac vice pending*)
                                               jonathan.brightbill@kirkland.com
19                                             Dennis J. Abdelnour (*pro hac vice pending*)
                                               dennis.abdelnour@kirkland.com
20                                             KIRKLAND & ELLIS LLP
                                               655 Fifteenth Street, N.W.
21                                             Washington, D.C. 20005
                                               Telephone: (202) 879-5000
22                                             Fax: (202) 879-5200

23                                             Attorneys for Defendant
                                               ZONEPERFECT NUTRITION COMPANY

24

25

26

27  [7] While a few courts have permitted unjust enrichment claims, this is not even the minority view as
the Ninth Circuit's decision in *Smith v. Ford Motor Co.* makes clear.  *See Charles Schwab & Co., v.*
28  *Bank of Am.*, 2011 WL 1753805, at *5 (N.D. Cal. 2011); *Levine v. Blue Shield of Cal.*, 189 Cal. App.
4th 1117, 1138 (Cal. Ct. App. 2010).

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certify that all counsel of record who have consented to electronic service are being served with a copy of the attached **ZONEPERFECT'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS** via the CM/ECF system on March 30, 2012.


DATED:  March 30, 2012                              By: *<u>/s/ Jonathan D. Brightbill</u>*
                                                                          Jonathan D. Brightbill